DANIEL WEYAND, *et al.*, v. S. G. STOVER, *as Treasurer of Republic county, et al.*

1. TITLE TO ACT; *Valid Statute.* The title to an act of the legislature reads as follows: "An act authorizing the board of county commissioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county buildings in said counties." The "subject" of this act is the creation and use of a fund to build county buildings, and the body of the act expressly applies to the three counties of Ottawa, Washington and Republic. *Held,* That the act contains only one subject, which is sufficiently expressed in its title, and is therefore

35 — 35 KAS.

not in conflict with that provision of §16, article 2 of the constitution which requires that "no bill shall contain more than one subject, which shall be clearly expressed it its title."

2. READING BILLS; *Emergency; Journal.* The bill was introduced in the senate and read a first and a second time on the same day, and the senate journal does not show whether a case of emergency existed, or not. *Held,* That, although it is necessary under §15, article 2 of the constitution that "every bill shall be read on three *separate* days in each house, unless in case of emergency," yet that each house is the exclusive judge as to when a case of emergency arises or exists; and it is not necessary, in order that the reading of the bill shall be considered valid, that the emergency shall be stated upon the journal.

3. ——— *Discrepancies; Valid Act.* From the legislative journals it appears that there were several discrepancies or irregularities in the description of the bill and the title to the bill; but, *held,* that the same do not render the act as subsequently passed by the legislature void.

4. ——— *Presumption.* Nothing appearing showing that the bill was not read section by section on its final passage, as required by §15, article 2 of the constitution, *held,* that presumptively it was so read.

5. BILL, *Read Three Times.* Where the house journal shows expressly and affirmatively that the bill was placed upon its third reading, and that afterward it "was read the third time," *held,* that it is sufficiently shown that the bill was read three times in the house.

6. ENROLLED STATUTE; *Presumption.* The enrolled statute is very strong presumptive evidence of the regularity of the passage of the act and of its validity, and is conclusive evidence of such regularity and validity, unless the journals of the legislature show clearly, conclusively and beyond all doubt, that the act was not passed regularly and legally.

### Error from Republic District Court.

ACTION brought by *Weyand* and others, against *Stover,* as treasurer of Republic county, and others, to enjoin defendants from collecting certain taxes. The defendants demurred to plaintiffs' petition on the ground that it does not state facts sufficient to constitute a cause of action. At the April Term, 1884, the court sustained the demurrer, and rendered judgment for costs against the plaintiffs. They bring the case here. Other facts appear in the opinion.

Chapter 80 of the Session Laws of 1883 has the follow-
ing title:

"An act authorizing the board of county commissioners of
Ottawa county, and other counties therein named, to provide
a fund and appropriate the same for the purpose of building
county buildings in said counties." (Laws of 1883, p. 128.)

The act was approved February 27, 1883, and purports to
have taken effect February 28, 1883. Before its passage it
was senate bill No. 226. The printed journals of the two
houses show as follows:

On Friday, February 9, 1883, the following proceedings
were had in the senate:

"By consent, Senator Patchin introduced bill No. 226, An
act authorizing the board of county commissioners of Ottawa
county to provide a fund and appropriate the same for the
purpose of building county buildings, and to provide for the
building of the same. The bill was read the first time. On
motion of Senator Patchin, the rules were suspended, senate
bill No. 226 was read the second time, and referred to the
committee on judiciary." (Senate Journal, 367.)

On Thursday, February 15, 1883, the chairman of the com-
mittee on judiciary made the following report:

"MR. PRESIDENT: Your committee on judiciary, to whom
was referred senate bill No. 226, An act authorizing the board
of county commissioners of Ottawa county to provide a fund
and appropriate the same for the purpose of building county
buildings, and to provide for the building of the same, have
had the same under consideration, and instruct me to report
the bill back to the senate with the recommendation that it be
passed.                        S. O. THACHER, Chairman."
(Senate Journal, 426.)

On Wednesday, February 21, 1883, the following proceed-
ings were had in the senate:

"Senator Patchin moved that the rules be suspended, and
senate bill No. 226, An act authorizing the board of county
commissioners of Ottawa county to provide a fund and appro-
priate the same for the purpose of building county bridges,
and to provide for the building of the same, be considered

engrossed, and placed on the calendar for third reading, subject to amendment and debate, which motion prevailed." (Senate Journal, 543.)

On Thursday, February 22, 1883, the following proceedings were had in the senate:

"Senator Patchin moved that the rules be suspended, and that senate bill No. 226, which was on the calendar for third reading, subject to amendment and debate, be read the third time now, which motion prevailed.

"Senate bill No. 226, An act authorizing the board of county commissioners of Ottawa county to provide a fund and appropriate the same for the purpose of building county bridges, and to provide for the building of the same, was read the third time, and being subject to amendment, Senator Rector moved to amend the bill so the provisions thereof shall apply to Washington county, which motion prevailed.

"Senator Case moved to amend the bill so its provisions shall also apply to Jewell county, which motion prevailed.

"Senator Brown moved to amend the bill by adding Republic county to the counties named in the bill, which motion prevailed.

"The question then being, Shall the bill pass? The roll was called, with the following result: Yeas, 22; nays, 0."

The names of the senators voting, and those absent, are given. (Senate Journal, 576.)

Also, on the same day, the chairman of the committee on engrossed bills made the following report:

"MR. PRESIDENT: Your committee on engrossed bills, to whom was referred senate bill No. 226, An act authorizing the board of county commissioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county buildings, and to provide for the building of the same, have examined the same, and instruct me to report the bill back to the senate correctly reengrossed.　　　　　　　　A. R. GREENE, *Chairman.*"

(Senate Journal, 589.)

Also, on the same day, the secretary of the senate made the following report to the house:

"MR. SPEAKER: I am directed to inform the house that the senate has passed the following bills: " . . . Senate bill

No. 226, An act authorizing the board of county commission-
ers of Ottawa county to provide a fund and appropriate the
same for the purpose of building county bridges, and to pro-
vide for the building of the same.

HENRY BRANDLEY, *Secretary.*"

(House Journal, 732, 733.)

On Friday, February 23, 1883, the following proceedings
were had in the house:

"On motion of Mr. Orner, senate bill No. 226, An act au-
thorizing the board of county commissioners of Ottawa county
to provide a fund and appropriate the same for the purpose of
building county bridges, and to provide for the building of the
same, was placed on third reading, subject to amendment and
debate." (House Journal, 743.)

On Saturday, February 24, 1883, the following proceedings
were had in the house:

"Senate, bill No. 226, An act authorizing the board of
county commissioners of Ottawa county to provide a fund and
appropriate the same for the purpose of building county bridges,
and to provide for the building of the same, was read the
third time, and the question being, Shall the bill pass? the
roll was called, with the following result: Whole number of
votes cast, 92; constitutional majority, 63. Yeas, 91; nays,
1; absent or not voting, 33."

The names of the members voting for and against, and
those absent, are given. (House Journal, 787.)

On Monday, February 26, 1883, the chief clerk of the
house made the following report to the senate:

"MR. PRESIDENT: I am directed to inform the senate that
the house has amended senate bill No. 226, An act authoriz-
ing the board of county commissioners of Ottawa county to
provide a fund and appropriate the same for the purpose of
building county bridges, and to provide for the building of
the same, by striking out of second line of section 1 the word
'Jewell,' and respectfully desires your concurrence therein.

(Senate Journal, 642.) H. L. MILLARD, *Chief Clerk.*"

And on the same day, the following proceedings were had
in the senate:

"Senator Patchin called up house message relating to senate
bill No. 226, An act authorizing the board of county com-

missioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county buildings, and to provide for the building of the same.

"The house having amended the bill by striking therefrom Jewell county, Senator Patchin moved that the senate concur in house amendment.

"On which the roll was called, with the following result: Yeas, 22; nays, 1."

The names of the senators voting for and against, and those absent, are given. (Senate Journal, 645.)

On the same day, the secretary of the senate made the following report to the house:

"MR. SPEAKER: The senate has also concurred in house amendment to senate bill No. 226, An act authorizing the board of county commissioners of Ottawa county to provide a fund and appropriate the same for the purpose of building county bridges, and to provide for the building of the same. HENRY BRANDLEY, *Secretary.*"
(House Journal, 803.)

The bill was enrolled and duly signed by the officers of the respective houses, and signed and approved by the governor, and is now on file in the office of the secretary of state as a duly-enrolled statute, and is duly published in the Session Laws of 1883, as chapter 80, and on pages 128 and 129.

*A. D. Wilson, F. W. Sturges,* and *A. B. Wilder,* for plaintiff in error.

*T. M. Noble, J. G. Lowe,* and *B. R. Hogin,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Daniel Weyand and others in the district court of Republic county, to enjoin the defendant, S. G. Stover, treasurer of Republic county, and others, from collecting certain taxes because of their supposed invalidity. A demurrer to the plaintiffs' petition was interposed by the defendants, upon the ground that the petition did not state facts sufficient to constitute a cause

of action. This demurrer was sustained by the district court. The plaintiffs bring the case to this court.

The taxes sought to be enjoined in this case depend for their validity upon chapter 80 of the Laws of 1883. If that chapter is valid as applied to Republic county, then the taxes are valid; but if that chapter is void as applied to that county, then the taxes are void; and the question of the validity or invalidity of that chapter is the only question involved in the case. The plaintiffs claim that it is void for several reasons. They claim: First, that the subject of the act is not clearly expressed in its title, within the meaning of §16, article 2 of the constitution; second, that the act contains more than one subject, in violation of said §16, article 2 of the constitution; third, that the act was not legally passed.

The title to the act reads as follows:

"An act authorizing the board of county commissioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county buildings in said counties."

Republic county is expressly named in the body of the act, and the act expressly applies to Republic county. The "subject" of the act is the creation and use of a fund to build county buildings, and the act expressly applies to the three counties of Ottawa, Washington, and Republic. This sufficiently appears by the body of the act and also by the title thereto having reference to the body of the act. This is only one "subject," and it sufficiently appears in the title to the act. We do not think that the first two grounds for claiming that the act is invalid, are tenable. Questions with regard to the titles to acts have been elaborately discussed by this court in many prior cases. (*The State v. Barrett*, 27 Kas. 213, and cases cited on page 218; *Martin v. Borgman*, 21 id. 672.; *Board of Education v. The State*, 26 id. 44.)

1. Title to act; valid statute.

The plaintiffs also claim that the act was not legally passed. The act was senate bill No. 226, and was introduced in the senate on February 9, 1883, and was read a first and a second

time on that day, and referred to the committee on judiciary. The plaintiffs claim that this reading of the bill twice on the same day, without its being shown on the journals or elsewhere that a case of emergency existed, and what that emergency was, is in violation of § 15, article 2 of the constitution, which requires that "every bill shall be read on three *separate* days in each house, unless in case of emergency." Now we

2. Reading bills; emergency. think that each house of the legislature is the exclusive judge as to when a case of emergency arises or exists, within the meaning of the constitution; and it is not necessary, in order that the reading of the bill shall be considered valid, that the emergency shall be stated upon the journal.

The title to the bill when the same was introduced in the senate, was, as shown by the senate journal, as follows:

"An act authorizing the board of county commissioners of Ottawa county to provide a fund and appropriate the same for the purpose of building county buildings, and to provide for the building of the same."

In many of the subsequent proceedings the title to the bill is not stated in the journals in these words. In some places where the word "buildings" is used, the word "bridges" is substituted. The journals also show that before the bill passed the senate, the counties of Washington, Jewell and Republic were added to the bill, and the title was so amended that when the bill was engrossed the title read as follows:

"An act authorizing the board of county commissioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county buildings, and to provide for the building of the same."

Several times afterward, however, the word "bridges" appears in the place of the word "buildings." It appears, however, from the legislative journals, that the last act that was done by either house, was the act of the senate in concurring in the house amendment to the bill, and in that place the bill is described as—

"Senate bill No. 226, An act authorizing the board of county

commissioners of Ottawa county, and other counties therein named, to provide a fund and appropriate the same for the purpose of building county *buildings,* and to provide for the building of the same."

It is clear from the legislative journals that there was no attempt made to describe the bill or the title thereto literally and with exact precision in the journals; but only an attempt to describe the substance of the bill or the title. In several instances the literal terms of the title were not used, and in 3. Discrepancies; a few instances the word "bridges" was substi-valid act. tuted where the word "buildings" should have been used. We do not think that these discrepancies or irregularities render the act void. In all probability the bill itself was right. The title to a bill is the last thing agreed to in either house. We shall have more to say hereafter with regard to this and other questions.

It is further claimed by the plaintiffs in error that the act is void for the reason that the bill was not read section by section on its final passage, as required by § 15, 4. Presumption. article 2 of the constitution. Presumptively, it was so read, and there is nothing showing the contrary.

It is further claimed that the bill was not read three times in the house, but only once. Now the house journal shows 5. Bill, read expressly and affirmatively that the bill was three times. placed upon its third reading in the house, and that afterward it "was read the third time" in the house. Now it could not have been read the third time in the house unless it had been read a first and a second time; and there is nothing anywhere showing that it was not read a first or a second time.

Irregularities in the passage of bills have been elaborately discussed in several cases in this court, and we would refer to those cases: *Division of Howard Co.,* 15 Kas. 194; *Comm'rs of Leavenworth Co. v. Higginbotham,* 17 id. 62; *Prohibitory-Amendment Cases,* 24 id. 700; *The State v. Francis,* 26 id. 724; *In re Vanderberg,* 28 id. 243.

In the case of *The State v. Francis*, 26 Kas. 731, the following language is used:

"The enrolled statute is very strong presumptive evidence of the regularity of the passage of the act and of its validity, and that it is conclusive evidence of such regularity and validity unless the journals of the legislature show clearly, conclusively and beyond all doubt, that the act was not passed regularly and legally. . . . If there is any room to doubt as to what the journals of the legislature show, if they are merely silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid."

6. Enrolled statute; presumption.

This language is cited with approval in the case of *In re Vanderberg*, 28 Kas. 254; and we think it fairly states the law.

The judgment of the court below will be affirmed.

All the Justices concurring.