W. J. CONLY, Appellant, v. E. G. DILLEY, as Sheriff of Woodbury County, Iowa, and State of Iowa, on the Relation of JOHN D. HAMMOND, Appellee, v. CITY COUNCIL OF THE CITY OF DES MOINES, IOWA, AND OTHERS, Appellants.

**Statutes:** CONSTRUCTION. In all cases involving statutory construc-
1 tion the court will look not only to the particular provision under consideration but to the entire statute, on the assumption that each word and provision has been used for an intelligent purpose; and it is always proper and frequently necessary to consider other related statutes, especially those in existence when the one under consideration was enacted.

**Intoxicating liquor:** STATEMENT OF CONSENT: TERMINATION: STATUTE.
2 Chapter 101 of the Acts of the Thirty-First General Assembly changed the law under which a general consent to the sale of intoxicating liquor should continue in force until revoked by a

proceeding in the nature of a counter petition, and provided for an absolute and unconditional expiration by mere lapse of time, so that consent to an individual dealer by the municipal authority ceased with the termination of the general consent.

**Same:** EFFECT OF TERMINATION OF GENERAL CONSENT. The Act of the Thirty-Third General Assembly limiting the number of saloons in certain cities and towns, and providing that in cases where the number of resolutions of consent which had been granted exceeded the limit the council need not cancel a sufficient number to comply with the limitation, does not have the effect to extend the general consent beyond the time fixed by the Act of the Thirty-First General Assembly; so that an individual dealer had no rights under a resolution of the council based on a general consent which had expired by limitation under the latter statute.

**Statutes:** ENACTMENT: LEGISLATIVE RECORD: PRESUMPTION. The court will not presume that an amendment to a bill pending before the general assembly was adopted and became part of the law as enacted, simply on the strength of the fact that it was favorably reported by a committee of one branch of the assembly; but the reasonable presumption, arising from the fact that the bill as finally passed, enrolled and approved by the Governor did not contain the amendment is that the same was rejected, the legislative journal being silent as to its disposition subsequent to the report of the committee.

*Appeal from Woodbury and Polk District Courts.*—HONS. DAVID MOULD and LAWRENCE DE GRAFF, Judges.

MONDAY, DECEMBER 18, 1911.

THE opinion states the nature of this litigation and the material facts to be considered.—*Affirmed.*

*Henderson & Fribourg* and *Will E. Johnston,* for appellant Conly.

*E. T. Morris, Thomas Sellers,* and *Guernsey, Parker & Miller,* for appellant City Council of Des Moines.

*E. A. Burgess, Fitzpatrick & Frantzen,* and *Lane & Waterman, amici curiae,* for appellants generally.

*George Cosson,* Attorney-General, *N. J. Lee,* Special Counsel, *John F. Joseph, H. H. Sawyer, C. T. Jepson,* County Attorney of Woodbury County, *Thos. J. Guthrie,* County Attorney of Polk County, *Popham & Havner,* and *Carl R. Jones,* for appellees.

WEAVER, J.—A statement of consent for the sale of intoxicating liquors in Woodbury county, Iowa, under the provisions of the statute known as the "Mulct Law" (Code, sections 2432-2455), was presented to the board of supervisors, and upon being duly canvassed, was adjudged sufficient on January 7, 1901. No appeal from that finding was ever taken. Under the statute then in force this consent would remain effective for its designed purposes until revoked according to law, subject of course to future legislation on that subject. Later the law was amended by the Thirty-First General Assembly (chapter 101), limiting the effect of petitions of general consent thereafter to a period of five years, and further providing that petitions of consent theretofore given and not otherwise revoked, should "become null and void" on and after five years from July 1, 1906.

On April 15, 1909, there was passed and approved a statute commonly spoken of as the "Moon Law," which is found in chapter 142 of the Acts of the Thirty-Third General Assembly. Section 1 of this act provides that no city or town council shall grant consent to sell intoxicating liquors as a beverage at retail, to a greater number than one to each 1,000 of the population of such municipality. By section 2 it is provided that in cities and towns, where, at the date of the passage of the act, the number of outstanding consents or permits was already in excess of the limit fixed by section 1, it shall not be mandatory on such councils to cancel or withdraw consents to bring the number within such limit, and such resolutions of consent may be renewed by city and town councils to the person or

persons holding the same or to their assignees or grantees, unless said resolutions become inoperative by reason of the person holding the same violating any of the laws of the state relating to the sale or disposition of intoxicating liquor, "in which event no new or additional resolution shall be granted to any person, except in accordance with the provisions of this act." Section 3 prohibits the giving of such consent to any person violating the liquor laws of the state and makes such disability continue for a period of five years. Section 4 reads as follows: "No resolution of consent granted by any city or town, in violation of the provisions of this act, shall be valid or of any force or effect, or operate as a bar against any of the penalties provided in chapter 6, title 12 of the Code, the supplement to the Code and amendments thereto and supplementary thereof, but nothing in this act shall operate to extend any consent now or hereafter granted beyond the time at which such consent shall expire as by law provided."

In December, 1909, in evident anticipation of the effect of the statute of the Thirty-First General Assembly hereinbefore referred to, and under which petitions of general consent would expire on June 30, 1911, a new petition was prepared and presented to the board of supervisors by which it was duly canvassed and found sufficient under date of December 31, 1910, which finding has never been set aside. At the time of the passage of the Moon law, and the subsequent transactions involved herein, the city of Sioux City had a population according to the last preceding census of about forty-seven thousand people, and there were outstanding resolutions of consent passed by its counsel to the number of seventy-eight, under which an equal number of places for the sale of intoxicants in said city were being maintained, and at no time since then has the number of such consents ever been reduced to an aggregate within the limit fixed by the Moon law.

On February 11, 1911, the city council of Sioux City

passed a resolution giving its consent to the plaintiff, W. J. Conly, to keep and maintain a place in which to carry on the business of retailing intoxicating liquors as a beverage, and on the same day a duly certified copy of that resolution was filed in the office of the county auditor. This resolution was passed as a renewal of a former consent given to Conly or to his grantor prior to the enactment of the Moon law and did not operate to increase the number of consents which were then outstanding. Relying upon this consent, Conly carried on said business to a date beyond June 30, 1911, when an information was filed against him and he was arrested on charge of selling intoxicating liquors in violation of law. The information sets out in detail most of the facts hereinbefore recited and concedes that if the resolution of consent granted to Conly on February 18, 1911, was an authorized act under the statutes of this state then existing, then he is not guilty of the offense with which he is charged; but it avers, and such is still the contention of the appellees, that the council could not lawfully give such consent, and notwithstanding the fact that said Conly has otherwise, in all respects, conducted his business in accordance with the mulct statute, he is not entitled to the benefit of the bar which that statute provides.

On being taken into custody by the sheriff, Conly instituted this proceeding in *habeas corpus,* alleging that his detention is illegal, in that the information shows upon its face that he is not guilty of any violation of law and because the statute of April 15, 1909, is unconstitutional and void.

Upon the hearing under this writ, the truth of the facts as contained in the foregoing statement was conceded by all parties, and upon consideration thereof the court announced its conclusions and judgment as follows:

First. The statement of general consent, filed January 7, 1901, terminated July 1, 1911, by operation of law.

Second. The general statement of consent filed December 30, 1910, was a new and original statement of consent, in no manner connected with the former statement, and the same did not curtail or extend any rights which may have been acquired under said former statement.

Third. Prior to the filing of the new statement of consent, December 30, 1910, the city council had no authority to grant permission to sell intoxicating liquors beyond the time when the statement of general consent then on file would expire, to wit, July 1, 1911.

Fourth. The resolution of consent granted to plaintiff's assignor expired July 1, 1911, unless the same was legally extended by some act of the city council, or was extended by operation of law.

Fifth. The filing of a new statement of general consent, December 30, 1910, did not operate to extend the resolution of consent granted by the city council; the city council alone having the authority to extend the resolution of consent granted by it.

Sixth. The city council had no authority to grant a new resolution of consent on February 18, 1911; there being more than forty-seven resolutions of consent outstanding and in operation.

Seventh. The city council had no authority on February 18, 1911, to grant a renewal of a resolution of consent to extend beyond July 1, 1911, there being more than forty-seven resolutions outstanding, and the same, in so far as attempting to authorize the sale of intoxicating liquors after July 1, 1911, was in conflict with section 4 of chapter 142 of the Acts of the Thirty-Third General Assembly.

Eighth. The defendant in selling and keeping for sale intoxicating liquors after July 1, 1911, was doing the same in violation of law, and his arrest and detention is legal.

It is therefore ordered, adjudged, and decreed that the plaintiff's petition be, and the same is hereby, dismissed, and that he remain in the custody of the defendant, the sheriff of Woodbury county, and that he pay the costs of this action taxed at $————.

From this order and judgment the plaintiff has ap-

pealed. Involving the same proposition of law is the case of *Hammond v. City Council of Des Moines*, mentioned in the title to this opinion, and by agreement of parties and counsel, the two appeals have been argued and submitted together and will be disposed of in a single opinion.

The last-entitled case was brought in equity by a citizen of Polk county alleging that the population of the city of Des Moines according to the last official census is less than 87,000, and that under the limitation imposed by the Moon law, said council can not lawfully grant or issue more than eighty-six consents for the maintenance of places for the sale of liquors. It is further alleged that consents to the number of eighty-six have already been granted, and the council is about to increase that number beyond the legal limit, and an injunction is asked to prevent such illegal action. Answering the petition, the defendants admit the population to be as alleged by the plaintiff. They also admit that they have issued eighty-six consents to as many different parties to maintain liquor saloons in the city, and say that such consents have all been renewals of earlier consents issued prior to April 14, 1911. They further say that they subsequently adopted seven additional resolutions of consent, which, but for the pendency of this action, would be made of record and delivered to the parties in whose favor they were given, and that unless restrained from so doing, it is their intention to complete such record and make such delivery. On the trial of issues thus joined the parties stipulated that prior to the act of the Thirty-First General Assembly, limiting the period for which petitions or statements of general consent to five years and invalidating such consents as were then outstanding after June 30, 1911, a general consent of the voters of said city had been duly and regularly procured and never revoked. That under the authority thus conferred the council had issued, and at the date of the enactment of the Moon law there were then outstanding and unrevoked, ninety-five con-

sents to as many different persons to conduct liquor saloons in said city, all of which had been regularly and lawfully given, and up to the time of the trial of this case none of such permits had ever been surrendered or forfeited because of any violation of law by the party or parties holding the same. It was further admitted that in December, 1910, a new petition of consent by a majority of the legal voters of the city was presented to the board of supervisors of Polk county, by which board said petition was canvassed and adjudged sufficient. It was also admitted that on June 29, 1911, said council adopted eighty-six resolutions of consent for as many different saloons, all being renewals of consents originally issued prior to the passage of the Moon law, and that on June 30, 1911, said council passed seven other like resolutions in favor of seven other individuals having like qualifications with those included in said first list of eighty-six. It is further conceded that the persons to whom these consents have been given have in all respects complied with the provisions of the mulct statute if the resolutions of consent in excess of the eighty-six first granted were lawfully passed or if the council had legal right and authority under the statute to grant the same. Upon this showing the court entered a decree granting the relief prayed by the plaintiff, and the defendants appeal.

The sole question presented by this record is one of the construction and effect of the Moon law (chapter 142 of the Acts of the Thirty-Third General Assembly), with special reference to that part of said chapter which obviously undertakes for some greater or less period to relieve cities in which saloon consents were already outstanding in excess of one to each one thousand of population from the necessity of reducing such number to the required limit, save as such limit might be reached by voluntary surrender or forfeiture or by operation of law. The real inquiry, when reduced to its briefest terms, is whether this extension or grant of authority to maintain

the excess of saloons over and above the general statutory limit expired with the expiration of the petitions of general consent outstanding and in force at the date of the enactment of the Moon law, or whether it continues indefinitely so long as such petitions are succeeded by others which are duly canvassed and found sufficient as provided in the mulct statute.

To avoid confusion of terms it should be kept in mind that among the conditions precedent to the benefits of the mulct statute are two different "consents." The first, which constitutes the initial step to the securing of such benefits, is the consent of the requisite proportion of the electors which is evidenced by a written petition or statement to be canvassed by the board of supervisors. The second is the consent given by resolution of the city council to the individual applicant proposing to establish or conduct a liquor saloon. Other conditions of that privilege are not involved in these cases, and we need not consider them; but, without both of the consents mentioned, the bar of the mulct statute is not available.

The evident purpose of the Moon law is to impose a restraint or limit of some sort upon the authority of the city council to unduly multiply the number of consents to individual dealers, and of course, if the council disregard such limitation and grant consents in excess thereof, they can afford no protection to persons doing business under color of the authority so given.

At the time of the passage of that act, some of the cities of the state, acting under authority of the statutes theretofore existing, had, through their respective councils, issued consents materially in excess of the proposed limit, and the adoption of such limit without qualification would have imposed upon such councils the perhaps embarrassing responsibility of withdrawing consent from a sufficient number of individuals to bring the total within the requirements of the law. To meet this situation, certain qual-

ifications were attached to the bill to avoid an abrupt change of conditions and at the same time insure the final reduction (automatically or otherwise) of the number of consents in all cities to a point within the statutory maximum. Certainly, we can not attribute to the Legislature any purpose under the guise of a general statute to make an unconstitutional distinction between cities by which one may be forever relieved from obedience thereto while another is forever held to strict compliance with its terms. Let us then turn again to the very language in which these qualifications or modifications of the general terms of the statute is couched. Section 2 provides as follows: "In all cities and towns where a greater number of persons than are provided in section one hereof now hold resolutions of consent to sell intoxicating liquors at retail, it shall not be mandatory under the provisions of this act for city or town councils to cancel or withdraw a sufficient number of such resolutions of consent to comply with the provisions of section one hereof and such resolutions of consent may be renewed by city and town councils to the person or persons holding the same or their assignees or grantees unless such resolutions of consent shall become inoperative by reason of surrender or forfeiture," etc. Section 4 reads as follows: "No resolution of consent granted by any city or town council in violation of the provisions of this act shall be valid or of any force or effect or operate as a bar against any of the penalties provided in chapter 6, title 12 of the Code, the supplement to the Code, 1907, and amendments thereto and supplementary thereof, but nothing in this act shall operate to extend any consent now or hereafter granted beyond the time at which it will expire as by law provided." The legislative history of this act, as disclosed by the official journals, was offered in evidence in the trial court, and these records indicate that the final clause of section 4 was the last of several amendments attached to the bill before being put upon its passage. The

effect of this clause is the subject to which arguments of counsel are largely devoted. The appellants urge that section 2 clearly empowers the city council to renew all the consents outstanding at the date of this enactment, and that, so far as anything in that section is concerned, such renewals, unless surrendered or forfeited, may be extended indefinitely until the time comes when there is no longer existing any valid general consent of the electors, and this is so without regard to the fact that the original general consent has expired, providing it has been immediately succeeded by another. The final clause of section 4 they say has little or no effect except by way of giving emphasis to the thought that consents for which provision is made in section 2 shall not be given indefinite extension by mere force of the statute, but must depend upon being renewed from time to time just as would have been the case had this particular statute never been enacted.

In this, as in all cases of statutory construction, the court must look not only to the words of the provision or clause under discussion, but to the statute in all its parts.

1 STATUTES: construction. It must assume that each provision and each word has been employed for an intelligent purpose, and the enactment must be interpreted as a coherent whole; all its parts being given their proper effect. These are commonplaces of the law of statutory construction. To do this it is always proper and frequently quite necessary to take into consideration other statutes relating to the same general subject, more particularly those other statutes which were in existence when the one under investigation was adopted.

Now, it will be remembered, as we have already recited, that the Thirty-First General Assembly had so amended the mulct statute that petitions of general consent thereafter granted should remain effective for five years only, and that as to those already outstanding, they

2 INTOXICATING LIQUOR: statement of consent: termination: statute.

should expire on June 30, 1911. It is worth while here to inquire as to the effect of this law.

Up to that time a sufficient petition of consent continued in force indefinitely until revoked by a proceeding in the nature of a counter petition. If a general consent was in force, city councils were authorized to grant consents to individual dealers annually; that is, the consent to the individual, unless renewed, would expire in one year. Some of the counsel appearing for appellants deny this limitation; but we think it clearly implied from the conditions laid down in Code, section 2448. Such, also is the practical construction which has quite generally been placed upon the statute by city councils throughout the state, and it has been so held by this court in *Fidelity Co. v. Jenness,* 138 Iowa, 725.

When therefore the Legislature undertook to deal with the bill enacted later into chapter 142 of the Acts of the Thirty-Third General Assembly, for the purpose of placing a limit on the number of saloon consents, it had to deal with the situation we have already outlined. There were numerous valid petitions of general consent outstanding, some of which (including all granted prior to the enactment by the Thirty-First General Assembly) would expire June 30, 1911, and others (including all which had become effective after that amendment) which would expire at different dates after June 30, 1911. Under these general consents, special or individual consents had been issued in excess of the proposed limit. To meet these conditions the bill was so amended in the second section as to permit the renewal of this excess of individual (annual) consents. Of this there can be no doubt. But how long does this privilege of renewal continue? Is that authority exhausted by a single renewal, or does it extend from year to year indefinitely? Does it cease with the life of the general consent then in force, or will it continue throughout each successive five-

3 SAME: effect of termination of general consent.

year period, so long as general consents continue to follow one another? If the bill had passed as it stood before the last amendment to section 4, these questions would not be at all easy of solution. To say the very least, the language of section 2 is by no means so full, clear, or explicit as to remove all doubt upon the propositions we have here suggested. This vagueness and uncertainty seem to have sufficiently impressed the minds of our lawmakers to induce the final amendment attached to the bill in these words: "But nothing in this act shall operate to extend any consent, now or hereafter granted, beyond the time at which such consent shall expire as by law provided." This language naturally suggests the inquiry: When do such consents expire as by law provided? Primarily it must be said that, under the construction we have put upon the mulct statute, all resolutions of consent expire with the annual period for which they are granted. It is argued for the appellants, however, that if this point be conceded, the statute preserves to the particular class of consents which we are here discussing, the right of renewal. Let that proposition be admitted for the purposes of this case, and we are next brought to consider the effect upon such individual consents of the expiration of the general consent, the fundamental condition precedent without which compliance with all other conditions is of no avail as a defense to a prosecution under the general prohibitory law. But, as we have already noted, the state has seen fit to put a definite limit of five years to the efficiency and life of every general consent, and it follows of necessity that consents given to individuals by the city council must cease and become of no effect with the general consent upon which they are dependent for their vitality. Whether the word "consent," as used in the last clause of section 4 of the statute, be construed to refer to the general consent of the electors, or to the resolution of consent by the council to an individual, or to both, the

result is the same. The act of the Thirty-First General Assembly, fixing the five-year limit, draws a line beyond which neither can pass. The question whether the electors will avail themselves of the privileges and immunities of the mulct law is then thrown open anew precisely as if it had never before been passed upon by them. No vested rights are acquired in one period which are carried over into another.

If any individual dealer is thereafter entitled to immunity or protection, it is because he holds the consent of the council based upon a new general consent, and not one based upon a general consent which has expired by statutory limitation. If this be the correct interpretation of the law, as we think it clearly is, there can be little difficulty in giving meaning and effect to all parts of the particular statute here under consideration. Reading sections 2 and 4 together with this view in mind, they provide in substance that the excess consents may remain in force and be renewed from time to time until the expiration of the general consent by virtue of which they were authorized. To hold otherwise is to say that section 2 has the effect to extend the protection of the general consent then in force beyond its general limit as passed by the act of the Thirty-First General Assembly, and the right to do so is expressly negatived by the last clause of section 4 of the act of the Thirty-Third General Assembly.

Counsel say that the "time at which such consent shall expire as by law provided" has reference solely to its expiration by revocation or forfeiture as provided by Code, section 2451. But why so narrow its application? After this section was enacted and before the passage of the Moon law, the Legislature had provided for an absolute and unconditional expiration of such consents by mere lapse of time, so that at the date of the latter act, every general consent was liable to expiration by revocation on a sufficient petition of the electors, or by

lapse of the five-year period. On what principle then shall we say that, in providing that section 2 of the Moon law shall not operate to extend any consent beyond the time at which it will expire by law, the Legislature had in mind only an expiration by forfeiture or by petition of revocation, and not an expiration by lapse of the statutory period? We discover no ground for the distinction.

Counsel press upon our attention, what is undoubtedly true, that the Legislature, facing the fact that some cities and towns had granted consents to individuals largely in excess of the limit about to be imposed, realized that a sudden and arbitrary elimination of such excess would work a measure of injustice to those who had entered the business and invested time and money therein on faith of the law as it then existed, and it was desired to provide some means by which that reduction could be brought about more gradually and the parties adversely affected by it given reasonable time to adjust themselves to the changed situation. Conceding all this, the construction we put upon the statute would appear reasonably well adapted to that end. Upon the pasage of the act all the general consents then outsanding in the state had, under the restrictions imposed by the act of the Thirty-First General Assembly, from two to five years yet to run according to the respective dates of their origin, and it is certainly not a harsh or essentially unjust proposition to hold that the time thus afforded was sufficient to satisfy the most exacting sense of justice.

Counsel for appellant Conly have assailed the validity of the Moon law on the ground that it does not appear to have been passed with due regard for the provisions of our state Constitution. The precise point seems to be that the two houses of the Legislature did not concur in the same bill. Stated as briefly as practicable, the bill was first introduced in the Senate by which it was amended, passed,

4 STATUTES: enactment: legislative record: presumption.

and sent to the House. The House committee to which it was referred reported it back recommending four several amendments, among which was one which would have eliminated the final clause of section 4. Several days later the House Journal, page 1877, records that on motion of a member the Senate file in question with proposed amendments was taken up and considered. The journal then proceeds to say: "The following amendments were recommended by the committee." The amendments which follow this statement in the journal are two in number; the first being a verbal change in section 1, and the second is a change by which section 2 was made to read as it now appears in chapter 142 of the laws of that session. No reference is made to the other two amendments recommended in the original committee report. The record then proceeds with the statement that the "amendments were adopted," following which the previous question was ordered, the rules suspended, and the bill, being read the third time, was put upon its passage and passed by a yea and nay vote 71 to 25. The bill was then reported back to the Senate in the form of the present statute, where the amendments attached by the House were concurred in, and the bill as so amended was passed by a constitutional majority. Being duly enrolled, it was approved by the Governor and is published among the acts of that assembly. No objection is made that the bill, as published, is not identical with the enrolled bill signed by the proper officers and filed and preserved in the office of the Secretary of State. The record of the passage of the two House amendments is objected to because it is said to be a mere expression of opinion by the clerk or by the editor of the journal, and not a record of any actual proceedings. It is further urged, as we understand counsel, that because the committee recommended four amendments to the bill, and the journal records or mentions that two of them were adopted by the House, without anywhere disclosing what became of the

other two amendments, we must assume that all four received the sanction of the House, while the bill, as passed by the Senate, included the first two only. It is further urged that, as the report of the committee submitted four amendments, and as the journal of proceedings had, on the second reading of the bill, records that the "amendments were adopted," it must be presumed that all were adopted. These objections are not well taken. In the first place, it is extremely doubtful if the courts can properly go behind the enroled bill to scrutinize the details of its legislative history for grounds upon which to hold it invalid. *Clare v. State,* 5 Iowa, 510; *Duncombe v. Prindle,* 12 Iowa, 1; 36 Cyc. 971. It may be that if the record affirmatively disclosed the adoption of an amendment which does not appear in the enrolled bill, or that such bill did not receive a constitutional majority of either House, or other vital defect of that nature, the court would not be bound to accept the enrollment and publication of an alleged statute as a finality; but we are here asked to go very much farther than the suggested case and to presume that the House did adopt certain amendments of which there is not the slightest record, except of the fact that they were recommended by a committee. The fact that the journal does not show what was done with these amendments may afford good ground to criticise the manner of keeping the record; but we know of no rule of law or reason by which we can presume they were adopted by the House. On the contrary, the reasonable presumption from the fact that only the other two expressly shown to have been adopted and the bill was reported in that form to the Senate, and in that form received the vote of the Senate and the approval of the Governor, and is so attested by the enrolled bill, is that the missing amendments as reported by the committee were duly rejected. See Am. & Eng. Ency. Law (2d Ed.) 556; *Weyland v. Stover,* 35 Kan. 545, (11 Pac. 355). Or if not formally rejected, and they

were in some manner overlooked and never brought to a vote, it could not be considered a fatal defect in the passage of the bill with such amendments as were in fact adopted.

There can be no question as to the identity and number of the House amendments adopted. They are set out in full in the record, and are but two in number. The court has been favored with numerous arguments by distinguished counsel, and we have given their carefully prepared briefs the thorough consideration to which they are entitled. This opinion, already of. tedious length, can not be further extended to review the authorities cited. Our examination of them indicates that none can be considered as opposed to the conclusion we have hereinbefore indicated. For the reasons stated we think the judgment of the trial court in each of the cases here being considered is correct.

It should be said in closing that, while the court is united in the conclusion above indicated, some of its members do not wish to be committed to the holding that resolutions of consent provided for by the statute (Code, section 2448) must be renewed annually. In their judgment it is sufficient for the purposes of this appeal to hold that it is competent for the city council to issue resolutions of consent for a definitely fixed period and to renew the same from time to time as that period expires, but that no consent so given or any renewal thereof, shall have force or effect beyond the time when the general consent of the voters in force at the date of the resolution expires by statutory limitation.

For the reasons stated, the judgment of the district court in each of the cases herein considered must be, and it is, *affirmed.*